# MISSOURI PACIFIC RAILWAY COMPANY v. LARABEE.

## ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 135.   Argued December 15, 16, 1913.—Decided June 22, 1914.

A State cannot burden the right of access to this court, nor does the power of the State extend to regulating proceedings in this court.

A state court has not, nor can a statute of the State give it, the power to assess as against one party to a suit in this court a sum for attorneys' fees for services rendered in this court as against another party to the suit, when such assessment is not authorized by the law of the United States or by the rules of this court.

A writ of error from this court to review the judgment of a state court and the supersedeas authorized by the Judiciary Act are Federal and not state acts.

A state court, when so authorized by the laws of the State, has the power to award actual damages for business losses which are suffered by reason of the acts sought to be controlled or enjoined in the suit after the allowance by this court of a writ of error and supersedeas, including reasonable attorneys' fees in the proceedings in the state court. *Quære*, whether the state court can award punitive damages.

The existence of the right to sue on a supersedeas bond does not imply an exclusion of the right to sue under an existing general and applicable law for proper and reasonable damages.

A classification which is based on the distinction between that which is ordinary and that which is extraordinary is reasonable and not repugnant to the equal protection provision of the Fourteenth Amendment which only restrains acts regulating judicial procedure so transcending the limits of classification as to cause them to conflict with the fundamental conceptions of just and equal legislation.

A state statute imposing reasonable attorneys' fees in actual mandamus proceedings against the party refusing to obey a peremptory writ is not repugnant to the equal protection clause of the Fourteenth Amendment either because it does not apply to other proceedings or because it is not reciprocal. The classification is not unreasonable; and so *held* as to the statute to that effect of Kansas involved in this case and as herein applied.

85 Kansas, 214, reversed.

A DISPUTE as to a small charge for demurrage having arisen between the Missouri Pacific Railway Company and

the Larabee Flour Mills Company, the Railway Company to enforce payment, suspended the rendering of a certain class of switching service which it had previously regularly performed for the Mills Company. The latter on September 15, 1906, commenced in the Supreme Court of Kansas mandamus proceedings to compel the continuance of the service. After a response to an alternative rule and a hearing on the eighth of December, 1906, the court granted a peremptory mandamus. 74 Kansas, 808. At the close of the opinion there was the following memorandum (p. 822):

"The court has authority to render judgment in favor of the plaintiff for any damage it has sustained (Gen. Stats. 1901, sec. 5193). The plaintiff is given ten days in which to file a claim for damages, stating separately the character and amount of each item. The defendant is given ten days after notice of the filing of the claim in which to except to any items which it may deem not recoverable. The court will then pass upon the exceptions, if any be taken, and make orders respecting a hearing."

Some days thereafter a claim of damages was filed enumerating fifteen items. The first eight concerned various business losses alleged to have been occasioned by the suspension of the service, such as decrease in the output of the mill, increased cost of hauling, etc., etc. Four of the claims on these subjects aggregated $4907.39, and four stated no amount but reserved the right to make a future claim for losses in case the litigation should be prolonged and the resumption of the service postponed. The remaining six items, with one exception, related to small expenses alleged to have been incurred in the mandamus suit. One of them, however, the fourteenth, made a charge of $2500 "to cash paid and plaintiff's agreement to pay Waters & Waters attorneys' fees in this case." The fifteenth item reserved the right to make a charge for future

legal services "if this case is taken to the Supreme Court of the United States, whatever such services may be worth." A few days after this claim was filed, on December 24, 1906, a writ of error was issued from this court to the judgment in mandamus and a bond to operate as a supersedeas was approved. About two years thereafter, on January 11, 1909, the case was decided in this court and the judgment below was affirmed. 211 U. S. 612.

After the mandate went down, leave was given to file an amended claim for damages and on the same day a Commissioner was appointed to hear the testimony concerning it and report. The amended claim was filed. It was divided into three general classes, first, damages asserted to have arisen from loss of business, etc.; second, damages claimed as the result of the expenses and outlay for the suit; third, cost incurred or anticipated, occasioned by the hearing of the claim. The first, that is, the business losses, was embraced in separate items substantially following the order of the original claim, that is, it was based on alleged loss of output, increased cost of operation, etc., etc. The amounts of many of these items were larger as they covered the time from the discontinuance of the service up to the filing of the amended claim. The aggregate of the claims was $18,921.90 as compared with $4907.39 made at the time of the first claim. The second, the expenses of the suit, was greatly changed. Leaving out two insignificant items, as amended the claim was in substance as follows:

The claim for $2500 paid or to be paid to Waters & Waters for personal services was changed to read, "For the reasonable value of the services of Waters & Waters to bring this action and to attend to the same in the Supreme Court of the State of Kansas, the sum of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 2,500.00

"Tenth: For the reasonable value of the services of Waters & Waters in this case. in the Supreme Court of the United States, the sum of .................................... $40,000.00

"Eleventh: For cash paid out for printed briefs in the State and United States Supreme Court, the sum of ......................:............     93.50

"Twelfth: For the reasonable value of the professional services of John F. Switzer, attorney at law, employed to assist Waters & Waters in the Supreme Court of the United States, the plaintiff in the best judgment of the partners composing said firm, deeming it necessary after considering the momentous and far-reaching controversy made, urged and argued in the Supreme Court of the United States and which controversy it could not avoid, the sum of ...................   3,000.00

"Thirteenth: For the reasonable value of the professional services of the firm of Rossington & Smith, attorneys at law, also employed to present the case of the plaintiff in the Supreme Court of the United States, the plaintiff in the best judgment of the partners. composing said firm, deeming it necessary, after considering the momentous and far-reaching controversy made, urged and contended for in the Supreme Court of the United States, and which controversy it could not avoid, the sum of ...................   30,000.00

"Fourteenth: For the railroad fare, hotel bills and reasonable expenses of W. H. Rossington and J. G. Waters in attending on the United States Supreme Court in April, 1908, the sum of $250 each and making a total of........................................     500.00

"Fifteenth: For the railroad fare, hotel bills and reasonable expenses of Charles Blood Smith and J. G. Waters in attending on the Supreme Court in October, 1908, the sum of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  480.60

"Sixteenth: For the costs due the plaintiff in the Supreme Court of the United States, the sum of . . . . . . . . . . . . . . . . . . . . . . . . . . . .  148.25"

The 17th, 18th, and 19th items embraced small items of traveling and other expenses of the parties and some of their attorneys. In the items of court expenses the difference between the original claim was substantially this, that the claim had grown from about $2800 for attorneys' fees in the state court when the original claim in damages was filed to a sum in excess of $75,000.00, all of which increase resulted from charges made for professional services rendered in this court in connection with the trial of the case. The remaining items of the third class related to expenses incurred under the reference to the Commissioner before whom the case was pending with a reservation of the right to make future charges for such purpose when the reference was completed.

The Railway Company objected to the various items in the amended claim as follows: To those covering the business losses, decrease of output, increased expenses, etc., etc., besides denying that the suit was the proximate cause of the losses represented by the alleged claims and asserting their speculative nature, it was specially charged that in so far as they included items arising after the allowance of the writ of error from this court and the giving of the supersedeas bond they were not within the cognizance of the court but were matters alone of Federal competency within the jurisdiction of this court. So far as the claims for alleged outlay and expenses including attorneys' fees in the state court were concerned, it was alleged that there was no right to recover them because

the only authority under which they could be allowed was a statute of the State of Kansas relating to mandamus proceedings and that such statute as construed by the court of last resort of the State was repugnant to the due process and equal protection clauses of the Fourteenth Amendment because under such construction a right was given by the statute to a plaintiff in mandamus to recover attorneys' fees as damages, while no reciprocal right in case of success was given to a defendant and no such right was given to litigants generally. Coming to the alleged right to recover attorneys' fees for services rendered on the writ of error in this court and the other items, such as briefs, traveling expenses, hotel bills, etc., etc., it was expressly charged that under the statutes of the United States the effect of the writ of error from this court and the supersedeas was to deprive the state court of all authority over such expenses and that moreover "Under such statutes and laws of the United States, this Court has no power, authority or jurisdiction to consider the claim and demand for damages on account of attorneys' fees for services rendered in such proceedings in error from the Supreme Court of the United States to the Supreme Court of Kansas; and for the further reason that, if the said plaintiffs were entitled to any damages, their application therefor should be made to the Supreme Court of the United States, or in an independent proceeding brought on the supersedeas bond so approved and allowed as a supersedeas by the Chief Justice of this state. . . . and because, further, to allow such claim would be violative of the Constitution of the United States, and especially the Fourteenth Amendment thereof, which prohibits any state from denying to any person, company or corporation the equal protection of the laws, and prevents any state from depriving any person, company or corporation of its property without due process of law; and because of such Judiciary Act (of the United States) . . ., this court

is deprived of all jurisdiction to consider or determine any such question or element of damage in a proceeding of this kind; and because, further, the Supreme Court of the United States, in affirming the judgment of this court . . . allowed to said plaintiffs, on account of attorneys' fees, the sum of $20.00 and assessed the same against the said defendant. . . ."

After proof and hearing the Commissioner made an elaborate report stating fully what he conceived to be the facts and the law of the case. On the subject of the various claims made for the allowance of damages for a charge of fees for professional services rendered in the Supreme Court of the United States, the Commissioner made the following statement:

"I find, that no agreement has ever been had between the Mill Company and any of the attorneys as to the amount of their compensation; that neither of the attorneys has at any time entered on his books a charge against the Mill Company for services rendered; nor have they informed the Mill Company of the amount intended to be charged; nor have they determined in their own minds any definite amount intended to be charged.

"I find, that the attorneys will claim the full amount, and will accept whatever amount that shall be determined by this Court in this proceeding to be a reasonable compensation for their services in the case and allowed as part of the damages.

"I further find, that it is mutually understood between the Mill Company and the attorneys named that whatever amount is recovered in this proceeding on account of fees and expenses of counsel will be paid by the Mill Company to and accepted by the attorneys as a full discharge of the liability to them."

The conclusions of the Commissioner as to the amounts to be allowed as damages under the three classes of claims were as follows:

As to the first class, he reduced the claim for
business losses, increased expenses, etc., etc.,
from $18,921.90 to....................... $ 5,658.10
    As to the amount claimed as due because of
the professional services of Waters & Waters
in the state court the sum claimed was allowed
in full................................... 2,500.00
    As to the items for professional services ren-
dered in the Supreme Court of the United
States, including hotel bill, etc., the amount
was reduced from about $75,000 to......... 11,480.00
    Under the third class three small items were
allowed relating to the expenses of the parties
in Kansas and concerning the reference to the
Commissioner............................ 376.00

Total.......... $20,014.10
    Both parties excepted to the report of the Commissioner
on various grounds and after a hearing the Supreme Court
sustained his action, and affirmed his report. 85 Kansas,
214.

*Mr. B. P. Waggener* for plaintiff in error.

*Mr. Charles Blood Smith* and *Mr. Joseph G. Waters*,
with whom *Mr. John C. Waters* and *Mr. John F. Switzer*
were on the brief, for defendant in error.

    MR. CHIEF JUSTICE WHITE, after making the foregoing
statement, delivered the opinion of the court.

    Both before the Commissioner and to the court where
the report of the Commissioner was acted on the proposi-
tions under the Constitution and laws of the United States
upon which the railway company relied, were pressed and
overruled and the rightfulness of having so done is the

question here for decision. But first we notice a motion to dismiss for want of jurisdiction. It is difficult to grasp the ground upon which it rests. In one aspect it would seem to assert that there is no jurisdiction because the Federal rights which were passed upon below were correctly decided. But this obviously goes to the merits. In the only other possible aspect it would seem that the motion proceeds upon the theory that the Federal rights which were decided below were so obviously rightly decided that the contention of error concerning them is too frivolous to sustain jurisdiction, a view which is supported by a statement in the argument for the motion that of course there would be jurisdiction if it appeared that the judgment below "under the color and sanctity of the law inflicted exceptional and unjust exactions." But taking the most favorable view for the motion and assuming that it proceeds upon the only ground upon which it can possibly be said to rest, that is, the frivolousness of the errors relied upon, we pass from its consideration since upon such hypothesis we think on the face of the record the contention is so clearly unsound as to require no further notice.

The Federal errors relied upon concern three subjects: The allowance of business losses, etc.; the award of a sum for attorneys' fees in the state court up to and including the writ of error from this court and the supersedeas; and the grant of an amount for attorneys' fees agreed or supposedly agreed to be paid for professional services rendered in this court on the writ of error and traveling expenses and hotel bills allowed for the same purpose. The three involve different considerations and hence we consider them separately. We come first to test the question as to attorneys' fees in this court, as it is the most important and far reaching since it involves considerations of the gravest importance going to the entire structure of our system of government, based as it is upon an absolute

denial of any power whatever in the court below to deal with the subject while the other two contentions at best challenge power but relatively or partially.

*First. The question of the power of the court to make the allowance for professional services rendered in this court on the former writ of error.*

There can be no doubt that tested by the general principles of law controlling in this court, by the statutes of the United States relating to the subject or the rules of this court concerning the same, the award for the attorneys' fees in question was absolutely unwarranted. We do not stop to review and expound the settled line of authority demonstrating this result because it would be wholly superfluous to do so as the principles have been so long the settled rule of conduct in this court and are so elementary as to require not even a reference to the cases. Some of the cases, nevertheless, we cite: *Arcambel* v. *Wiseman*, 3 Dall. 306; *Day* v. *Woodworth*, 13 How. 363, 372; *Oelrichs* v. *Spain*, 15 Wall. 211, 230–231; *Tullock* v. *Mulvane*, 184 U. S. 497, 511, *et seq.* Indeed, this view is not disputed in the argument at bar and was not questioned in the court below, since the court placed its action in making the allowances in question, not upon the supposed authority of any act of Congress nor of any practise of this court or rule thereof sustaining the same nor upon any principle of general law, but solely upon the theory that a state statute gave the power to make the allowances. Nothing could make this view clearer than does the following statement taken from the opinion of the court below (Syllabus—5): "The damages in mandamus proceedings comprehended by Section 723 of the Code (Gen'l. Stat. 1909, Sec. 6319) are the injuries sustained as the natural and probable consequences of the wrongful refusal to comply and the expense reasonably and necessarily incurred in compelling compliance with the alternative writ, including reasonable attorneys' fees in this court and in the Supreme

Court of the United States." And in addition the view
of the court below is aptly illustrated by the following
passage from the report of the Commissioner answering
the claim of the Railway Company as to the effect of the
writ of error from this court and the giving of the super-
sedeas and the resulting authority of this court over the
cause under the statutes of the United States—a passage
which the court below expressly adopted and made a
part of its opinion (p. 221):

"Upon this objection I conclude:

"1. That the jurisdiction of this court in mandamus is
the creation of the constitution and the statutes of the
State of Kansas.

"2. That this court is the sole judge of what that con-
stitution and those statutes provide.

"3. That the jurisdiction of this court in mandamus
over persons within its jurisdiction cannot be affected by
act of Congress.

"4. That the Judiciary Act does not and was not in-
tended to affect the jurisdiction of this court.

"5. That the jurisdiction of this court in mandamus
attaches upon the issuance of the alternative writ, and the
subject-matter of the proceeding being the awarding a
peremptory mandamus, that jurisdiction continues un-
abated, not only until the writ is awarded, but also until
the writ is issued and obedience to it enforced.

"6. That the alternative writ is a command of the per-
formance of specified and prescribed duties; and return
to the writ is a refusal to perform the duties prescribed;
the judgment awarding a peremptory mandamus is a
conclusive adjudication that such refusal was wrongful,
and the act of the court compelling compliance with the
command of the alternative writ.

"7. That the damages comprehended by the Kansas
statute are the injuries sustained as the natural and
probable consequences of the wrongful refusal to comply

and the expenses reasonably and necessarily incurred in compelling compliance with the command of the alternative writ.

"8. That the allowance of the writ of error did not operate to remove the suit from the Supreme Court of the State into the Supreme Court of the United States; its only effect was to bring up the record for purposes of review.

"9. The allowance of the writ of error did not operate as a supersedeas; the taking the supersedeas bond brought about the supersedeas. The taking the bond, and the supersedeas itself, in so far as it can be conceived of as a substantial act, was the action of the Supreme Court of Kansas."

We observe in passing, that the views concerning the Judiciary Act and the effect of the writ of error from this court and the relevant statutes of the United States which were expounded in this passage are not required to be reviewed because they are not necessarily involved in the decision below since that decision did not rest upon them but was based upon the operative effect of the state statute, and hence the views expressed as to the United States statutes in the passage quoted must have been adopted simply because they were considered to be illustrative of the principle by which the state statute was made to control. We, therefore, without in the slightest degree admitting their correctness even for argument's sake, pass the conclusions as to the statutes of the United States expressed in the passages of the report and shall not recur to them except in so far as under the principle of *noscitur a sociis* we may find it convenient to do so as illustrating the fundamental and destructive error embodied in the conclusion of the court as to the operative power of the state statute.

The question is then, Was the court below right in holding that it had the power because the Kansas statute so authorized to assess as against one party to a suit in the

Supreme Court of the United States a sum for attorneys' fees for services rendered in that court as against another party to the suit although such assessment, as we have seen, was not authorized by the law of the United States but was in conflict with the settled rule in the Supreme Court of the United States? It seems superfluous to put the question since its very statement conveys of necessity a negative answer. For how on the face of the question, consistently with the most elementary principles of our constitutional system of government can it be possibly assumed that a state statute could be made operative in the Supreme Court of the United States to the disregard of its settled rule of procedure and of the principles which had guided its conduct from the beginning, directly sustained by express rule adopted under the sanction of Congress?

We might well go no further, but in view of the importance of the subject we briefly advert to one or more of the obvious consequences which would arise from maintaining the principle. It would follow, of course, that the right to freely seek access to the Supreme Court of the United States would cease to exist, since it would be in the power of the States to burden that right to such a degree as to render its exercise impossible. How better could this be illustrated than by the case before us, that is, by the necessary implication that there would have been power in the court below if it had deemed it just to do so, to award the claim which was made for $75,000 attorneys' fees for services rendered in this court! Indeed, in the argument at bar it was freely conceded that it may well have been that the mainspring which caused the adoption of the statute relied upon was the deterrent influence which it would produce in the prosecution of writs of error to this court. Thus the argument proceeds: "The Railway Company refuses to obey; judgment is had against it; it still refuses, it seeks delay; it initiates

a writ of error in this court. By this method it makes the suit expensive. . . . It was just this situation that the legislature of Kansas intended to correct. . . ."

And the far-reaching operation of the principle by which the state statute could alone have been made to produce the result attributed to it by the court below is illustrated by the legal conclusions of the operation and effect of the statutes of the United States stated in the report of the Commissioner which was adopted by the court as expressed in the passage which we have previously quoted. This is the case since the views thus sanctioned are necessarily illustrative of the mental atmosphere by which alone it could have been possible to conceive that the state power extended to regulate the proceedings in the Supreme Court of the United States to the disregard of the express provisions of the act of Congress. A view which is not an over-statement when it is observed that among other things the conclusion which was below sustained was that the writ of error from this court and the supersedeas authorized by the act of Congress were not Federal but purely state acts. And, moreover, it was concluded that the exertion by the Supreme Court of the United States under the Constitution and laws of the United States of the power to bring up a case from the state court in order to review it and to grant a supersedeas in order to make that right effective, operated to leave the state court in possession of the case and only to move the record, hence creating a residuum of state power which as to such case gave authority to the state court to regulate, certainly as to attorneys' fees, the proceedings in the Supreme Court of the United States.

We shall reason no further, and shall content ourselves with pointing out that in substance and effect the absolute want of foundation for the contention here made has been in express terms foreclosed. For instance, at this term in *Harrison* v. *St. Louis & San Francisco R. R.,*

232 U. S. 318, a statute of the State of Oklahoma which burdened or impeded the right of free access to the courts of the United States was held to be repugnant to the Constitution and the destructive effect of such legislation upon our institutions was pointed out. And light on the subject is afforded by a consideration of the ruling in *Tullock* v. *Mulvane*, 184 U: S. 497. See also *Insurance Co.* v. *Morse*, 20 Wall. 445, 453; *Clark* v. *Bever*, 139 U. S. 96, 102–103.

*Second. The power of the court below to award damages for the business losses which were suffered after the allowance of the writ of error and the supersedeas.*

The contention is that the power did not exist since the effect of the writ of error and the supersedeas was to remove the case to this court and therefore deprive the court below of the right to consider any act causing damage done after the prosecution of the writ of error and the supersedeas. But conceding in the fullest degree the asserted effect of the supersedeas, that effect ceased with the affirmance of the judgment by this court and therefore necessarily opened the way for the court below to consider and determine how far the alleged illegal conduct of the Railway Company had entailed damages and consequent responsibility. Conceding further that the bond for supersedeas embraced such acts and the resulting damages therefrom and therefore there was a right to sue on the bond, again the deduction is a *non sequitur* because the right to resort to the bond did not imply an exclusion of the right to sue under the general law to recover damages if the election was made to follow that course. Of course, as there is nothing in this case even suggesting that the award of damages for acts done pending the writ of error in this court was so excessive as to justify the extreme inference that punishment for invoking the right to resort to this court was inflicted, we need not consider the rule which would be applicable in such a contingency.

*Third. The power of the court below to award damages for attorneys' fees for services rendered in the state court.*

The attorneys' fees were allowed by the court below in virtue of a statute which gave such power in case of mandamus proceedings. The construction of this statute which was adopted was not original in this case but was an application of an interpretation of the statute previously affixed to it, and indeed which was made prior to the commencement of the mandamus proceedings in question. (*Carney* v. *Neeley*, 60 Kansas, 672; *McClure* v. *Scates*, 64 Kansas, 282.) The contention is that as the statute exceptionally allows attorneys' fees in mandamus proceedings against one refusing to obey the peremptory writ of mandamus and does not allow them in other cases, it contravenes the equal protection of the laws clause of the Fourteenth Amendment and is void. But it is not open to controversy that the Fourteenth Amendment was not intended to deprive the States of their power to establish and regulate judicial proceedings and that its provisions therefore only restrain acts which so transcend the limits of classification as to cause them to conflict with the fundamental conceptions of just and equal legislation. The proposition here relied upon therefore comes to this: that there is not such a distinction between the extraordinary proceeding by mandamus and the ordinary judicial proceedings as affords a ground for legislating differently concerning the two. But when thus reduced to its ultimate basis, the proposition answers itself, since it cannot be formulated without demonstrating its own unsoundness. If more were needed to be said, it would suffice to direct attention to the distinction which must obtain between that which is ordinary and usual and that which is extraordinary and unusual. Or, to state it otherwise, to call attention to the difference between the duty to perform a ministerial act concerning which there is room neither for the exercise of judgment or discretion

and the right on the other hand to bring into play, judgment and discretion as prerequisites to the performance of an act of a different character, and the distinction which justifies the classification made by the statute also answers the argument that the equal protection clause of the Fourteenth Amendment is violated because the allowance of attorneys' fees was not reciprocal. *Missouri, K. & T. Ry.* v. *Cade*, 233 U. S. 642. The ruling in the case last cited also serves to demonstrate the want of merit in the contention that the question here presented is governed by *Gulf, C. & S. F. Ry.* v. *Ellis*, 165 U. S. 150.

Again we deem it necessary to observe that the opinion here expressed is confined to the case before us. We do not therefore imply that the reasoning here applied would be controlling in a case where although the name mandamus was preserved, in substance and effect, the distinction between that writ in an accurate sense and ordinary procedure would have disappeared.

It follows from what we have said that error was committed in the court below in allowing the items of damages for attorneys' fees, traveling expenses, etc., in the Supreme Court of the United States, and that from a Federal point of view there was no error in the judgment below to the extent that it awarded the damages complained of and allowed a claim for attorneys' fees for services rendered in the state court. And to give effect to these conclusions the judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*