Local Union No. 66 of the United Leather Workers International Union et al., Appellants, v. Herkert & Meisel Trunk Company et al., Respondents.*—5 S. W. (2d) 671.

St. Louis Court of Appeals.  Opinion filed May 1, 1928.

*Corpus Juris-Cyc. References: Courts, 15CJ, p. 930, n. 75; p. 1090, n. 47; Injunctions, 32CJ, p. 472, n. 64; Pleading, 31Cyc, p. 729, n. 54.

*John P. Leahy* for appellants.

384

*Charles A. Houts* for respondents.

DAUES, P. J.—This is a suit to recover attorney's fees and expenses incurred in securing a dissolution of an injunction issued by the Federal court, and recovery is sought as damages upon the injunction bond required by that court. The cause was tried to the court and jury, resulting in a verdict in favor of the plaintiffs in the

sum of $7500. Defendants duly filed their motion for new trial, which the court sustained upon the ground, among others, that defendants' instruction in the nature of a demurrer to the evidence should have been sustained, and from that order plaintiffs have appealed.

Appellants, plaintiffs below, in their petition set out with great particularity that respondents, defendants below, had theretofore filed a bill of complaint against appellants in the United States District Court in the city of St. Louis, Missouri, in which they sought a temporary restraining order against appellants who, of course, were defendants in the Federal court.

The petition alleges that on May 7, 1920, the United States District Court issued an order to show cause why a preliminary injunction should not be granted. The petition then sets out, step by step, the proceedings in the United States Court, eventuating in an order of that court, on September 25, 1920, granting a temporary injunction restraining appellants from committing any of the acts mentioned in said bill upon the condition that plaintiffs there, respondents here, give bond in the sum of $10,000 to pay the obligees "such costs and damages as may be incurred or suffered by any of the said obligees who may be found to have been wrongfully enjoined or restrained by such decree of temporary injunction, if such interlocutory decree of temporary injunction shall be dissolved as to the said obligees (defendants) or any of them, then this obligation shall be null and void, etc." The petition prays for a judgment for the face of the bond with execution for $9680 as damages suffered by the plaintiffs by a breach of the bond. Other necessary elements are appropriately alleged, but need not be set out here.

Exhibit "A" is appended to the petition, which is the bond in full. This shows that it was filed in the United States District Court and was approved by the judge of that court. Respondents' brief sets forth that a demurrer was filed to the petition and was overruled. The same statement was made by counsel for respondents in his oral argument to this court and was not denied by counsel for appellants. However, the record itself does not disclose that a demurrer was filed, and as we view it that is not a matter of moment here.

Defendants' answer is a general denial.

The motion for new trial specifies nine grounds. Specifications 6, 7 and 8 were sustained by the court. These specifications were: That the court erred in refusing to give defendants' instruction in the nature of a demurrer to the evidence; that the court erred in not giving respondents' instruction whereby the jury would have been told that plaintiff could not recover for any damages, costs or expenses incurred subsequent to the entry of the final judgment in the United States District Court, and, finally, that the court erred in giving instruction No. 1 for appellants authorizing the verdict for plaintiffs.

The three grounds in the motion for new trial taken together unequivocally presented to the trial judge the proposition that there was no liability for the alleged damages on the bond as pleaded and shown in the evidence. Regardless of whether a demurrer to the petition was filed, respondents at the opening of the case objected to the introduction of any testimony on the ground that no facts were stated in the petition "which show a liability of the defendants in this case." This objection was overruled and exceptions noted, and throughout the trial respondents' counsel closely riveted the attention of the court to that sole proposition, placing his whole reliance upon that defense. Of course, it is hardly necessary to state that if the petition wholly fails to state a cause of action, such defense may be raised at any time, even for the first time on appeal. Looking at the question from any angle, the point is whether or not there is any liability under the pleaded bond for attorney's fees, traveling expenses of the attorney and costs for printing briefs. These were the items alleged in the petition. The petition, on its face, pointedly presented such question as liability on the bond in the Federal court. The *ore tenus* objection, the demurrer at the close of the evidence, other instructions and the motion for new trial, all went to this point.

It becomes unnecessary in this case to refer to the proceedings in the Federal court, except for the history of same. It was a labor dispute, and appellants were enjoined temporarily and permanently in the United States District Court. On appeal to the United States Circuit Court of Appeals this was affirmed, but upon a final review by the Supreme Court of the United States same was reversed and on mandate of that court respondents' bill of complaint was finally dismissed at their costs.

Several points are argued by appellants here as to why the action of the lower court in setting aside this verdict and granting a new trial cannot be sustained. If, however, the lower court was correct in concluding that no recovery could be had upon the bond for these attorney's fees and expenses connected therewith under such bond, then all other questions raised by appellants herein are taken up by the roots. And as we view the law, it is not difficult to determine where merit lies on that question.

It is settled, and it seems as firmly as it can be settled, that the Federal courts, and indeed the Supreme Court of the United States, are committed to the view that attorneys' fees are not an element of damage upon a bond such as we have in question. And there is no longer any quibble as to Equity Rule No. 90, about which appellants strenuously argue. The old Equity Rule No. 90 was abrogated in 1912, when the present equity rules of the United States Supreme Court were adopted. The courts since then have likewise ruled that a recovery for these items could not be had on such a bond.

On June 22, 1914, two years after the abrogation of Rule No. 90, the Supreme Court of the United States decided the case of Missouri Pacific Ry. Co. v. Larabee, 234 U. S. 459. In that case that court, through Chief Justice WHITE, said, l. c. 468:

*"First. The question of the power of the court to make the allowance for professional services rendered in this court on the former writ of error.*

"There can be no doubt that tested by the general principles of law controlling in this court, by the statutes of the United States relating to the subject or the rules of this court concerning the same, the award for the attorneys' fees in question was absolutely unwarranted. We do not stop to review and expound the settled line of authority demonstrating this result because it would be wholly superfluous to do so as the principles have been so long the settled rule of conduct in this court and are so elementary as to require not even a reference to the cases. Some of the cases, nevertheless, we cite: Arcambel v. Wiseman, 3 Dall. 306; Day v. Woodsworth, 13 How. 363-372; Oelrichs v. Spain, 15 Wall. 211, 230, 231; Tullock v. Mulvane, 184 U. S. 497, 511 et seq. Indeed, this view is not disputed in the argument at bar and was not questioned in the court below since the court placed its action in making the allowance in question not upon the supposed authority of any act of Congress nor of any practice of this court or rule thereof sustaining the same nor upon any principle of general law, but solely upon the theory that a state statute gave the power to make the allowances. . . .

"The question is then, was the court below right in holding that it had the power because the Kansas statute so authorized to assess as against one party to a suit in the Supreme Court of the United States a sum for attorneys' fees for services rendered in that court as against another party to the suit although such assessment, as we have seen, was not authorized by the law of the United States but was in conflict with the settled rule in the Supreme Court of the United States? It seems superfluous to put the question since its very statement conveys of necessity a negative answer. For how on the face of the question, consistently with the most elementary principles of our constitutional system of government can it be possibly assumed that a state statute could be made operative in the Supreme Court of the United States to the disregard of its settled rule of procedure and of the principles which had guided its conduct from the beginning, directly sustained by express rule adopted under the sanction of Congress?"

That case was not an injunction suit but was a suit in mandamus, and illustrates all the more strongly the uniformity of the rule of the Federal courts to disallow attorneys' fees in suits in the Federal court, whether the case be one for injunction, or for infringement of patent, or for mandamus. For ready reference, we again set out the

cases in the Federal courts announcing this doctrine: M. K. & T. Ry. Co. v. Elliott, 184 U. S. 530; Tullock v. Mulvane, 184 U. S. 497; Oelrichs v. Spain, 15 Wall. 211; Lindeberg v. Howard, 146 Fed. 467; Missouri Pacific Ry. Co. v. Larabee, 234 U. S. 459.

Some reference is made to the Clayton Act. This act authorized injunctive relief under the same conditions against threatened conduct that would cause loss or damage as granted by courts of equity generally. The rules and practices in equity theretofore obtaining in the courts of the United States expressly made to apply to proceedings under the Clayton Act, and under those previously existing rules and proceedings no attorneys' fees were allowable under the circumstances of this case on an injunction bond. Congress did not change that situation under the Clayton Act. Therefore, the question of damage upon an injunction bond stands now as it stood prior to the enactment of the Clayton Act.

One more question can arise, and that is whether we are bound by the decisions of the Federal courts in construing the question of liability on this bond, and that question is hardly debatable.

In the case of National Bank v. Maryland Casualty Co., 270 S. W. 691, our Supreme Court has conclusively stated that we are bound by such decisions. There, that court held that attorneys' fees and expenses are not allowed as part of damages incurred in dissolution of temporary injunctions granted in suits in the Federal courts, and, further, that our State courts are bound by the Federal decisions where the bond is given in the Federal court and the injunction is there dissolved. That case is decisive of the case at bar.

Our further discussion could add nothing. There seems to be no question but that the lower court erred in allowing any testimony whatsoever to be introduced to support the petition; it again erred when it refused to sustain the demurrer to the evidence and instructed on the issues in the case, and was correct when it concluded on the motion for new trial that there was no liability on this bond for the items contained in the petition.

It is insisted that this court does not have jurisdiction of this case because of a "Federal question," but that same is lodged in the Supreme Court by the Constitution. A mere reading of the following cases indicates otherwise: Schwyhart v. Barrett, 223 Mo. 497, 122 S. W. 1049; Chastain v. Railroad, 226 Mo. 94, 125 S. W. 1099; State v. Goad, 246 S. W. 917.

Judgment affirmed and cause remanded. *Becker* and *Nipper, JJ.,* concur.