[No. 9287. In Bank. — February 22, 1887.]

CARMI W. BEACH, Respondent, *v.* J. B. COOPER ET AL., Appellants, and ALEXANDER MINING COMPANY, Respondent.

CORPORATION — ACTION BY STOCKHOLDER AGAINST DIRECTORS — MISAPPROPRIATION OF CORPORATE FUNDS. — A stockholder of a corporation may maintain an action in its behalf against the directors of the company for an accounting and recovery by the corporation of moneys belonging to it which had been fraudulently misappropriated by the directors.

ID. — CORPORATION NECESSARY PARTY DEFENDANT. — In such an action, the corporation is a necessary party defendant, and at no stage of the litigation can it be dismissed from the case without working a discontinuance.

ID. — APPEAL BY DIRECTORS — NOTICE OF APPEAL. — On an appeal by the directors in such an action from a judgment rendered against them, a notice of appeal served on the attorney for the plaintiff necessarily brings the corporation defendant before the appellate court.

ID. — FINDINGS — JUDGMENT. — The judgment rendered against the directors, *held*, not sustained by the findings.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the **opinion of the court.**

*Fox & Kellogg,* for Appellants.

*H. G. Sieberst,* for Respondents.

TEMPLE, J.— The plaintiff, a stockholder in the Alexander Mining Company, commenced this action against the individual defendants, who are the directors of the company, making the corporation also a defendant. The suit was brought on behalf of the corporation, alleging numerous frauds committed by the directors, and praying an account, and a recovery by the corporation of moneys of which it had been so defrauded. Judgment was rendered for the plaintiff, and this appeal is from the judgment, and from an order denying a new trial.

The corporation was formed in 1877 for the purpose of mining, and owned a lode of gold and silver bearing ore in the state of Nevada. It had constructed expensive works upon the mine, mostly upon credit, and was largely indebted, and in the year 1880 found itself financially embarrassed and the demands against it pressing.

Defendants J. B. Cooper, McNeil, and San Pedro owned a large majority of the stock of the corporation. Cooper and San Pedro owned individually several mining claims, located contiguous to or near the mine owned by the corporation. They concluded to sell the mines owned by themselves and the corporation. Accordingly, in June, 1880, Cooper and San Pedro executed a bond for the sale of their individual mining property and two thirds of the capital stock of the corporation, to Baldwin and McLaughlin.

The latter sent to New York one Welsh to effect, if

possible, a sale of the mines owned by the individuals, and also the property of the corporation. McLaughlin loaned money for the use of the corporation to the amount of sixty thousand dollars. Defendants Cooper and San Pedro became personally liable for this money. The individual defendants then endeavored to sell the property in New York, and at the same time to borrow, if possible, a large sum of money to meet the urgent demands.

Substantially it is found, —

That in December, 1880, the defendants caused the corporation to make a promissory note, payable to one L. E. Chittenden of the city of New York, for the sum of two hundred and fifty thousand dollars, with interest at the rate of nine per cent per annum, secured by mortgage upon all the property of the corporation.

That the defendant Ball, who was vice-president of the corporation, proceeded to New York, and while there, as the agent of J. B. Cooper and San Pedro, entered into a conspiracy with Brown, Chittenden, and Welsh to cause the note and mortgage to be assigned to Brown for the sum of one hundred and forty thousand dollars; that this purpose was accomplished and the money was paid to J. B. Cooper individually, and was used by him in violation of his trust, and not paid to the corporation until long afterwards; that as part of the fraudulent scheme they caused the corporation to execute another note for sixty-five thousand dollars to Brown on the fifth day of April, 1881, which was antedated as of December 22, 1880, also secured by mortgage upon the property of the corporation; that there was no valuable consideration whatever for this note received by the corporation.

That all these acts were in pursuance of and part and parcel of a fraudulent conspiracy of the individual defendants with Chittenden, which was intended to have the effect of increasing their own profits and income, to the loss and expense of the corporation. It is found that the corporation paid both notes in full.

The findings also show other smaller sums fraudulently expended by the directors.

The complaint does not contain any very distinct charge that the individual defendants did gain anything by the supposed frauds, or that the corporation lost anything. It is said in general terms, after stating the conspiracies and frauds perpetrated by said defendants, as follows: "Having and being by them intended to have the operation and effect of increasing their own private individual gains, profits, and income, to the loss and expense. of said corporation," etc.

The answer contains full and specific denials as to all acts of fraud alleged, and particularly denies that the notes and mortgages were not executed by the corporation or in its interest, or for the individual gain of the defendants, or that the corporation suffered loss thereby. Upon this issue there is no finding. True, it appears that the corporation gave its obligations for three hundred and fifteen thousand dollars for a loan for a few months of one hundred and forty thousand dollars. This was a very suspicious transaction, and would of itself go a great way toward the proof of fraud. But there was an attempt at the trial to show that the transaction was not really a disadvantage to the corporation; that it was heavily indebted, and the debts were pressing, and that it was necessary to have one hundred and forty thousand dollars at once to save the property of the corporation, and that the effect of the loan was to save its property from being sacrificed to pay the debts, and that thereafter it was sold for a large sum, the debts all paid, and a surplus left for the stockholders. It is not necessary now to say that such facts were satisfactorily proven; but here is a material issue upon which there is no finding.

In the ninth finding it is found that the individual defendants did not in 1879, 1880, or 1881, fraudulently or otherwise abstract or appropriate to themselves any money from the funds of the corporation save and ex-

cept the sum or sums thereinafter specifically set out.
The findings after that contain the findings, the sub-
stance of which we have stated, but no finding of any
moneys abstracted by the defendants.   There is no find-
ing that the defendants or any of them did receive, might
have received, or ought to have received anything what-
ever through or in consequence of the frauds charged
against them.   There is no order for an account to be
taken to ascertain such supposed gains.

The suit is brought for an account for the frauds,
wrongs, and breaches of trust, and for the sums re-
ceived by the defendants, or such other sums as they
received, or might or ought to have received, and all
the proceeds and fruits thereof.   Under the issues made,
we think the findings do not sustain the judgment.

As to the claim that the corporation is not before the
court, it is enough to say, for the purposes of the suit, the
plaintiff represents the corporation.

This is naturally subject to many limitations and qual-
ifications, but it is the theory of such action that the
legal agents of a corporation refusing or being dis-
qualified to act, the stockholders may assert their rights
through an action in behalf of the corporation.   We are
not called upon to say how far such a proceeding con-
cludes the corporation, but it is plain that the plaintiff
and the defendants continue to be the real adverse parties.

The notice of appeal was properly served on the attor-
ney for the plaintiff, and such an appeal necessarily
brings up also the corporate defendant, and in such a
proceeding it would seem that at no stage can that de-
fendant be dismissed from the case without working a
discontinuance.

The judgment is reversed and a new trial ordered,
with leave to either party to amend their pleadings if so
advised.

McFARLAND, J., McKINSTRY, J., THORNTON, J., PATER-
SON, J., and SHARPSTEIN, J., concurred.