[Civ. No. 14465. Second Dist., Div. Two. June 14, 1944.]

JOHN G. BOND, Respondent, v. FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES (a National Banking Association) et al., Appellants.

George I. Devor for Appellants.

Boyd C. Barrington and Frank L. Simons for Respondent.

MOORE, P. J.—The question for decision is whether a bank as executor of an estate may cause a debtor's obligation to

the estate to be reduced to judgment by the residuary legatee and assigned to the bank individually and thereafter be pleaded as a counterclaim to the action of the debtor against the bank individually for money which the bank as trustee had held for the debtor during the lifetime of the testator.

Plaintiff filed his action for declaratory relief alleging that he was the beneficiary of a trust established by his niece, defendant Doris Bond Sherman, December 31, 1935. The basic instrument provided that in the event that Seth Bond, the father of Doris, should predecease her the bank as trustee should at Seth's demise pay to plaintiff the sum of $1,000. Seth Bond deceased June 16, 1940, whereupon defendant bank qualified as the executor of his will. Plaintiff had no beneficial interest in decedent's estate but he was indebted thereto in the sum of $3,500 on three promissory notes executed to his brother in 1929 and which had been appraised at $1,000. Upon discovering the indebtedness of plaintiff to the Bond estate the bank insisted that the $1,000 due plaintiff be applied *pro tanto* to the extinction of his debt, leaving plaintiff still indebted to the estate in the sum of $2,500. Following the bank's refusal to pay him the $1,000 plaintiff instituted this action August 4, 1942, alleging the controversy, and as consequent relief demanded judgment for the $1,000.

By her answer filed September 9, 1942, Doris alleges the establishment of the trust, admits its provision of $1,000 for plaintiff and alleges that at the time the trust was created she was unaware of his debt to her father in the sum of $3,500. By its answer filed September 29, 1942, the bank alleges the subsisting indebtedness of plaintiff to the Bond estate and that as executor it has applied the $1,000 due plaintiff upon his $3,500 debt.

Subsequent to the filing of its answer the bank as such executor without order of court assigned the three promissory notes to Doris, who was the residuary legatee under the will of her father. In turn she caused suit to be instituted in Ohio, the domiciliary state of plaintiff, in order to obtain judgment upon the debt. Pursuant to cognovit clauses in the three notes, without personal service judgment was obtained against the debtor in the aggregate sum of $5,101.10. Subsequently Doris assigned the Ohio judgment to the bank individually and on November 19, 1942, the court below authorized the filing of a supplemental answer. The supple-

ment alleged as a counterclaim the judgment against plaintiff and demanded that it be set off against the $1,000 due plaintiff. Such pleading was never stricken and its allegations were found to be true.

Inasmuch as no point is made by respondent as to the validity of the Ohio judgment it is unnecessary to extend the discussion on that point. Suffice it to say that a judgment entered in another state upon a negotiable instrument containing a warrant of attorney to confess judgment without service of process is entitled to full faith and credit under the federal Constitution. (31 Am.Jur. 168.) The notes were not barred by any statute of limitation in Ohio. (Page's Ohio Gen. Code, § 11221.)

It appears that the primary basis of the court's rejection of the counterclaim arose out of the court's interpretation of section 438, Code of Civil Procedure. Prior to 1927 that section provided that in order to prevail a counterclaim must have existed at the commencement of the action. In that year the section was amended to read as follows: "The counterclaim mentioned in section 437 must tend to diminish or defeat plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action; . . ."*

There is nothing contained in this section to indicate that the Legislature intended that the counterclaim must have existed at the time of the commencement of the action. The existing statute was the evident attempt on the part of the lawmakers to establish a new law for the regulation of the pleading of counterclaims. Inasmuch as it is a complete statute in itself without reference to the superseded section, a reasonable interpretation is that the Legislature undertook to formulate a plan complete in itself without reference to

---

*Prior to 1927, it read as follows: "Section 438. When counterclaim may be set up. The counterclaim mentioned in the last section (section four hundred and thirty-seven) must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action;

2. In an action arising upon contract; any other cause of action arising also upon contract and existing at the commencement of the action."

the original provision upon that subject. It appearing that the Legislature's intention was to revise the entire subject matter of section 438 it must be presumed that they intended to substitute a new law for that which had formerly existed, and that any content of the old statute not repeated should be considered as repealed by the new even though there be no inconsistencies between the two. (*Mack* v. *Jastro,* 126 Cal. 130, 132 [58 P. 372]; *Stockburger* v. *Jordan,* 10 Cal.2d 636, 646 [76 P.2d 671]; *Jewett* v. *City Transfer & Storage Co.,* 128 Cal.App. 556, 561 [18 P.2d 351].) The enactment of the new statute will not be considered as repealing by implication but rather is it to be understood that the later legislative attempt is a revision of the entire subject matter embodied in the successive legislative enactments and that the latest was designed as a substitute for all preceding acts. Whatever of the old is excluded from the new must be ignored. All the limitations upon the right to counterclaim not found in section 438 as amended must be deemed to have been abolished by the new section. (*Buckman* v. *Tucker,* 9 Cal.2d 403, 408 [71 P.2d 69]; *Todhunter* v. *Smith,* 219 Cal. 690, 693 [28 P.2d 916]; *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428, 435 [292 P. 474].)

From a reasonable construction of the section and the cited cases it appears that the sole requisites of the counterclaim are (1) that it must tend to defeat or diminish plaintiff's demand; and (2) the demands must be reciprocal. (*Harrison* v. *Adams,* 20 Cal.2d 646, 649 [128 P.2d 9].) The intention of the Legislature to avoid a multiplicity of suits and to settle conflicting claims in a single action was clearly manifested. (*Terry Trading Corp.* v. *Barsky, supra.*)

Connection between the cause alleged by plaintiff and that which forms the basis of the counterclaim is unnecessary. (*Buckman* v. *Tucker, supra.*)

The demands of the parties are not lacking in mutuality. The bank is sued in its individual capacity. Proof that it appeared in any other character would have been inadmissible. It filed its counterclaim in the same capacity. The fact that the $1,000 originated in a trust carried by the bank was immaterial. The bank conceded its obligation to pay the $1,000. The transfer of plaintiff's debt by mesne assignments from the creditor estate to the bank is also of no consequence. The paramount facts are that plaintiff owed

the judgment and the bank as assignee thereof pleaded it as a set-off. ▆ As executor of the Bond estate the bank was justified in diligently pursuing such legal course as would conserve the estate for the legatees. In the execution of its office as executor the bank properly assigned to Doris the notes in order to obtain judgment upon them and thereby to conserve the assets of the estate. (*McCully* v. *Cooper*, 114 Cal. 258, 262 [46 P. 82, 55 Am.St.Rep. 66, 35 L.R.A. 492].) The assignments of the notes were absolute. They had been assets of the Bond estate in the custody of the court solely for the purposes of administration. Since Mrs. Sherman was the residuary legatee, the notes of plaintiff would have been distributable to her at the close of the administration. (Prob. Code, § 300.) But despite her actual as well as titular ownership of the notes, after recovering judgment thereon she assigned it to the bank. Thereby she saved herself from loss while enabling the bank to report a partial collection on the notes which had been deemed of no greater value than the amount recoverable as a set-off.

▆ That the bank individually held title to the judgment for the benefit of the estate was of no concern to the plaintiff. (*Lewis* v. *Adams*, 70 Cal. 403 [11 P. 833, 59 Am.St. Rep. 423].) While it had held the notes as executor of the estate, yet as between the bank and plaintiff the bank might assert the judgment as a counterclaim as though it owned the judgment in fee. (*Dambmann* v. *White*, 48 Cal. 439.) Plaintiff was in no position to object to the bank's strategy. So long as its performance as executor satisfies the residuary legatee in accounting for all of the residuum of the estate its total obligation in the premises will have been discharged. (See *Bond* v. *City of Pasadena*, 6 Cal.2d 139, 142 [56 P.2d 946].) Any failure in that respect would be a matter solely for the bank to settle with the residuary legatee.

▆ Finally, the judgment is contrary to the supplemental answer and the findings thereon. That pleading was filed pursuant to an order which was granted after notice to the plaintiff. While there is no formal order striking it, the court's decision suggests that it should be stricken. Conceding, arguendo, that the court's "conclusion" was an order striking the supplemental pleading, such an order would have been erroneous for the reason that no notice of the intended action of the court was served upon the defendants. A court

is without power to vacate an order involving judicial action regularly made and in its place enter another and different order without notice to the adverse party. (*Harth* v. *Ten Eyck*, 16 Cal.2d 829, 834 [108 P.2d 675] ; *Stevens* v. *Superior Court*, 7 Cal.2d 110 [59 P.2d 988] ; *McMahan* v. *Baringer*, 49 Cal.App.2d 431 [122 P.2d 63].)   Due notice to the party to be affected by a judgment is indispensable to a fair and orderly administration of justice.

The judgment is reversed with instructions to the trial court to enter judgment for defendants as prayed in the supplemental answer.

Wood, (W. J.), J., and McComb, J., concurred.