[Civ. No. 18584. Second Dist., Div. One. July 23, 1952.]

PAULINE V. WOOD et al., Appellants, v. NATHAN M. GORDON et al., Respondents.

Vaughan, Brandlin & Wehrle, J. J. Brandlin and Pat B. Trapp for Appellants.

Fleming, Robbins & Tinsman, Fred Horowitz and Alvin F. Howard for Respondents.

HANSON, J. pro tem.—In this shareholders' derivative suit instituted by preferred shareholders the ultimate question presented is whether the trial court erred in holding, upon the facts adduced, that section 834 of the Corporations Code was applicable and as a consequence that the plaintiffs were under a duty to deposit security for litigation expenses in favor of the defendants I. M. Weinstein, Harold Larson, and Robert Gordon.

The statute in question expressly provides that if a party upon a hearing pursuant to a proper motion establishes *either* (1) that there is no reasonable probability that the prosecution of the action against him will benefit the corporation or its security holders or (2) that he did not participate in the transaction complained of in any capacity, he shall be entitled to security for his reasonable litigation expenses of a character and in an amount to be fixed by the court upon the evidence adduced.

Under the statute the burden of proof is upon the moving party. In short, the burden is upon him to show, by a preponderance of the evidence, *either* that there is no fair likelihood of benefit to the corporation or its security holders and not that there is no foreseeable possibility or chance of slight benefit (*cf.* Ballentine, *Shareholders Derivative Suits,* 37 Cal.L.Rev. 399, 404); *or,* that he did not participate in the transaction complained of. It is for the trial court to weigh the evidence and its finding, based upon substantial conflicting evidence, is in this as in every civil case binding upon the appellate court.

As the statute requires the moving party to file and serve his motion within 30 days of the service of summons upon him (unless it is extended by the court), it follows that an order granting or denying security is a "final disposition of a claimed [statutory] right which is not an ingredient of the cause of action and does not require consideration with it" (*Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546-547 [69 S.Ct. 1221, 93 L.Ed. 1528]). The further statutory provision which vests the trial court with a discretionary power, upon a proper showing, to order an increase or decrease in the amount of the security, once security has been ordered, is in an entirely different category. (*Cohen* v. *Beneficial Industrial Loan Corp., supra.*)

The complaint avers that the defendant-respondents Weinstein, Larson and Gordon along with certain other defendant officers and directors, past and present, of the United Linen

Supply Company, entered into a successful conspiracy to defraud the corporation by violating their fiduciary duties to the corporation. In brief compass, the complaint avers that the defendants Gordon, Weinstein, Larson and Zipperman while directors of United aided by defendant Weingart, who was no longer a director or stockholder, conspired to purchase all the outstanding capital stock of a laundry corporation, i.e., Craig Laundry, Inc., for the purpose of causing the latter to expand its business so as to engage in the linen supply business, and thereby come into direct and unfair competition with United. It was also averred that the parties mentioned solicited and took away customers and key personnel from United Linen, and additionally transferred trucks, equipment, and supplies from United Linen to Craig, whereby they realized profits in excess of $1,000,000, and greatly reduced the business of United Linen and impaired its organization.

There was no direct evidence of the alleged conspiracy and the trial court expressly found that none of the three parties here involved had entered into any conspiracy. From the evidence adduced it was for the trial court to draw all reasonable inferences therefrom and it is not for us to draw contrary inferences.

Upon the evidence submitted the trial court declined to order security for litigation expenses as requested by the defendants Craig Laundry, Inc., Nathan Gordon (the father of Robert Gordon), Louis Zipperman, Ben Weingart, Consolidated Hotels, and certain other defendants. Accordingly, it is plain that the trial court was of the view that the parties just named had not individually sustained the burden of proof that rested upon them.

In appealing to us for a reversal of the order requiring security in favor of the respondents, the appellants contend (1) that section 834 of the Corporations Code was intended and should be interpreted to apply to "strike" suits and not to actions by bona fide shareholders holding a very substantial interest in the corporation; and (2) that the court made an erroneous conclusion of law when it adjudged there was a reasonable probability that no recovery could be had against the respondents.

The argument that the statute was intended and should be limited to strike suits is unavailing in view of its language. The test laid down by the statute as to one who has participated in some act complained of does not turn on whether

the suit is or is not a "strike" suit but whether there is a reasonable probability that its prosecution against the moving party will or will not prove of ultimate benefit to the corporation or its security holders. The statute does not distinguish between so-called strike suits and those that are generally classed as being bona fide. The distinction between such suits is however well known and, indeed, recognized by statutes of like tenor in other states. Accordingly, we must assume the Legislature was fully cognizant of those statutes and intended by the statute it enacted not to differentiate between the two types of suits. As the statute is clear-cut we are bound to give full effect to its language. If our statute, and those upon which it appears to be patterned in part, are too stringent or unduly restrict shareholders in their endeavor to recover from alleged fraudulent directors, as some writers contend, the remedy must be sought in legislative enactments and not by judicial pronouncements.

We come next to the question whether it may be said, as the trial court held, that the defendant Robert Gordon did not "participate" in any of the transactions complained of by plaintiffs and, accordingly, for that reason alone was entitled to security for his reasonable litigation expenses. In that aspect of the case we observe that appellants do not contend that Robert participated in any of the transactions of which they complain, but that they do contend that as he received all his shares in Craig as a gift from his father and not by purchase he stands in the shoes of his father and, hence, if his father Nathan is liable to United Linen he necessarily holds the shares in trust. The fallacy of the argument lies in the fact that while the trial court found, in effect, that there was a reasonable probability of liability on the part of the father it did not determine whether that liability stemmed from the purchase of shares of stock in Craig or because of the subsequent activities of that corporation acting through its directors and managers. If it should be found that Nathan Gordon did not violate his fiduciary duty in purchasing stock in Craig Laundry, Inc., but was liable in damages for breach of other fiduciary duties, a constructive trust would not arise with respect to the stock still in his own hands and *a fortiori* not in those transferred by him. Accordingly, it follows that if the court was of the view that the father was liable at most in damages, as we must assume, it did not err in requiring security in favor of Robert Gordon.

■ We come next to a consideration of the question whether the prosecution of the action against Weinstein would benefit the corporation. Upon the evidence the court could have found that Weinstein did not know until July, 1943, that Nathan Gordon as manager and Zipperman as assistant manager prior to March 1, 1943, had not only refused to do the laundry work of Consolidated Hotels, Inc., at United's laundry plant in Hollywood but had closed that plant as well. Hence, we do not see any theory upon which there could be a recovery against Weinstein for loss of profits or damages for the activities indulged in by Gordon and Zipperman, such as loaning equipment and key men to others at the expense of United—of which facts Weinstein testified he was unaware.

When in July, 1943, Weingart of Consolidated Hotels, Inc., telephoned from Los Angeles to Weinstein in Atlanta, Georgia, and told him United had thrown out the Consolidated laundry account, and that he could purchase the common capital stock of Craig Laundry, Inc., and through it get the laundry service Consolidated needed, he did not ask or suggest that United should reopen its laundry plant in Hollywood. What he asked of Weinstein was financial assistance in the purchase of the capital stock of Craig. To that request Weinstein responded by stating that Weingart could draw upon him up to $15,000. Subsequently this was done and Weinstein accordingly became the owner of one fourth of the Craig common capital stock. At the moment, United was not a competitor of Craig even though it would have been had it been operating its own laundry. Whether the entire common stock of Craig Laundry, Inc., which had been offered to Weingart was priced above or below its real market value; whether Craig was operating profitably or at a loss was not shown. Accordingly, it was not shown that Weinstein possessed at any time a so-called "corporate opportunity" which he should have tendered to or purchased for United Linen. The undisputed testimony is that Weinstein held the stock for only a year and then in July, 1944, disposed of it to Weingart for the exact amount he had paid for it. It was not until a year later that Craig entered the linen supply business in direct competition with United Linen. Upon the facts recited we think it clear that the trial court did not err in finding that Weinstein was entitled to security.

■ As the trial court found that Larson was not a party to any conspiracy the case against him necessarily must be

based on his alleged negligent inattention to his duties as a director as he was not a shareholder in either United Linen or Craig Laundry, Inc. He had no hand in the operations of either corporation except as a director, and is not shown to have had knowledge of what was or was not done by the management. His position as attorney for both corporations and as attorney for both Weingart and Weinstein involved only advice and the drawing of legal papers. Upon what basis he could be held for not forestalling, if he could, the purchase of the common stock of Craig by Weingart, Weinstein, Gordon and Hyman or in what manner he could effectively have forestalled Craig from entering into competition in 1945 with United Linen is not shown. We fail to see—on the facts as they were found by the trial court—any reasonable probability of liability on his part.

We agree with appellants that a director may not violate his fiduciary obligations, or acquire property in which his corporation has an interest or a tangible expectancy, or that he may not engage in a rival business to the detriment of his corporation, but these principles, as we view the evidence, were not violated. At least the trial court so found on conflicting substantial evidence and hence we are bound to sustain it.

The judgments are affirmed.

Doran, Acting P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 19, 1952, and appellants' petition for a hearing by the Supreme Court was denied September 18, 1952. Carter, J., was of the opinion that the petition should be granted.