[L. A. No. 22341. In Bank. Jan. 5, 1954.]

CHARLES BEYERBACH, Appellant, v. JUNO OIL COMPANY (a Corporation) et al., Respondents.

Zeutzius & Steffes, A. P. G. Steffes and Jamison & Jamison for Appellant.

Harry E. Templeton, Jessie Miller, Guy Knupp, Jr., and Burford & Hubler for Respondents.

O'Melveny & Myers, William W. Alsup, Philip F. Westbrook, Jr., Loeb & Loeb, Allen E. Susman, John L. Cole and Herman F. Selvin, as Amici Curiae on behalf of Respondents.

SCHAUER, J.—Plaintiff, a stockholder of defendant Juno Oil Company, instituted a stockholder's derivative suit to compel defendants Henderson and Carpenter to transfer a certain oil. lease to defendant Juno Oil Company and to account for and pay to Juno sums received under the lease as rents and royalties. Defendants moved, under section 834 of the Corporations Code, for an order requiring plaintiff to furnish security for reasonable expenses which might be

incurred by defendants in connection with the action. Plaintiff failed to deposit security as ordered by the trial court and the court dismissed the action. From the judgment of dismissal plaintiff appeals. He contends that the applicable portions of section 834 are unconstitutional, particularly in their requirement that plaintiff furnish security for the expenses of individual defendants who are sued not as officers or employes of defendant corporation but as third persons who dealt with the corporation; that defendants established no ground for requiring any security or, in the alternative, that the trial court abused its discretion as to the amount and form of security required; and that the court erred in dismissing the action at a time when plaintiff's motion to modify the original order in respect to its requirements as to form and amount of security was pending. We have concluded that each of these contentions is without merit.

The applicable provisions of section 834 are found in paragraph (b) thereof. They are as follows: Within 30 days after service of summons in a stockholder's derivative suit the corporation or any defendant may move for an order, on notice and hearing, requiring plaintiff to furnish security. The motion may be based on either of the following grounds: (1) that there is no reasonable probability that prosecution of the cause of action against the moving party will benefit the corporation or its security holders; (2) that the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity. At the hearing on the motion the court shall consider evidence material to the grounds of the motion and, when material, to a determination of the probable reasonable expenses, including attorney's fees, of the defense of the action. If the court determines that the moving party has established a probability in support of the grounds of the motion, it shall fix the amount and nature of security to be furnished by plaintiff for reasonable expenses, including expenses for which the corporation may become liable under section 830 of the Corportions Code.[1] A determination as to the furnishing of security is not a determination of the merits of any issue in the action. "The corporation and the moving party shall have recourse to such security in such amount as the court

---

[1] Section 830 provides for indemnification by a corporation of a director, officer or employe for reasonable expenses incurred in defending a suit against him which is based on his alleged wrong to the corporation, if he has successfully defended or if the court finds that his conduct merits indemnity.

shall determine upon the termination of such action.'' The amount of security must be reasonable and may be changed from time to time within the court's discretion. If the court requires that security be furnished as to any defendant, the action shall be dismissed as to such defendant unless the security has been furnished within a reasonable time fixed by the court.

The complaint herein alleges that plaintiff, defendant Henderson, and Scott Carpenter[2] orally agreed that defendant Juno Oil Company would be organized to operate oil leases to be acquired by plaintiff and the individual defendants and transferred to the corporation in consideration of stock to be issued by it; that the corporation was formed and the stock issued; that plaintiff acquired and transferred to Juno certain oil leases; that the individual defendants undertook to and did acquire a certain oil lease, known as the Norris lease, but refused to transfer it to Juno as agreed; and that Juno, despite plaintiff's demands, refused to compel transfer of the Norris lease. The complaint seeks to compel transfer of such lease and payment to the corporation of proceeds therefrom allegedly received by the individual defendants for the benefit of the corporation.

Each defendant moved, under section 834 of the Corporations Code, that plaintiff be required to furnish security for probable reasonable expenses, including attorneys' fees, which might be incurred in defending the action. The motions were based on the ground that there was no reasonable probability that prosecution of the action would benefit the corporation and, in the case of the individual defendants, on the further ground that they did not participate in the transaction complained of. The trial court at the hearing of the motions considered substantially conflicting affidavits and testimony.

By formal order dated August 27, 1951, the trial court ordered that ''plaintiff shall, within thirty days from the date hereof, deposit'' security of $5,000 as to each of the individual defendants and $1,000 as to Juno, in the form of cash or bonds of a surety company, and that if plaintiff ''fails to

---

[2] Scott Carpenter is since deceased. The administratrix of his estate is named as a defendant. For convenience Henderson and Carpenter will sometimes be referred to as the individual defendants.

Plaintiff also joined three other individuals, directors of Juno Oil Co., as defendants, but he has since dismissed his appeal as to them because he wishes to emphasize issues as to the application of the security requirement to those who assertedly wrong the corporation, not as officers or employes, but as strangers.

provide such security for any of the defendants herein, within the time herein provided, then upon a proper showing thereof, this action shall be dismissed as to any or all defendants for whom such security has not been given in the sums and in the manner as herein specified."

On September 24, 1951, plaintiff obtained an ex parte order which purported to grant him 30 days from the date thereof in which to deposit the security, and on October 22, 1951, plaintiff obtained another ex parte order which purported to grant him 30 days from the date thereof in which to deposit the security. On October 26, 1951, plaintiff filed a "Notice of Motion for Order Changing the Amount and Form of Security," by which he asked that the amount of security be reduced to $2,000 as to the individual defendants and $400 as to Juno, that plaintiff be permitted to file an undertaking executed by personal sureties, and that such security be furnished on or before December 1, 1951.

On October 30, 1951, defendants filed notices of motions to dismiss the action on the ground that plaintiff had failed to deposit the security required by the order of August 27, 1951. On November 19, 1951, the motions of plaintiff to change the form and amount of security and of defendants to dismiss the action were argued and taken under submission.

On November 27, 1951, defendant Juno Oil Company filed another notice of motion to dismiss, and on November 28, 1951, the individual defendants filed a similar notice of motion. These motions were heard and submitted on December 3.

On December 14, 1951, the trial court granted the last mentioned motions of defendants. On December 19 the court denied plaintiff's motion to change the amount and form of security, denied without prejudice defendants' motions to dismiss of which notice had been filed on October 30, and entered the judgment of dismissal from which this appeal is taken.

It appears that plaintiff did not comply with any part of the order for security. Instead, he contends that section 834 violates the equal protection clause of the federal Constitution (Amendment XIV, § 1) and the provisions of the state Constitution against special laws (art. IV, § 25) and against special privileges and immunities (art. I, § 21). Fundamentally, plaintiff's arguments as to constitutionality are answered, either directly or by necessary implication, by *Cohen* v. *Beneficial Industrial Loan Corp.* (1949), 337 U.S.

541 [69 S.Ct. 1221, 93 L.Ed. 1528] (which upheld the constitutionality of a New Jersey statute with a purpose similar to that of section 834; so far as appears, the New Jersey statute contained no provision as to, and the opinion does not discuss, individual defendants who were not officers or employes) and *Hogan* v. *Ingold* (1952), 38 Cal.2d 802 [243 P.2d 1] (in which the problem as to such individual defendants did not arise); see, also, *Whitten* v. *Dabney* (1915), 171 Cal. 621, 631 [154 P. 312] (which did not involve the problem of constitutionality of the statute but which pointed out that "Not only should a plaintiff in such a fiduciary capacity [held to be equivalent to that of a guardian ad litem, who is not in his own right a party to the cause] be willing to take no act that did not first receive the sanction of the court of equity to which he has appealed, but, more than this, he is not permitted to take any act without such sanction"). However, inasmuch as some of the particular aspects of plaintiff's arguments as to the constitutionality of a provision for security for and possible indemnification of an individual defendant who is not sued as an officer or employe of a corporation appear to be advanced in this case for the first time, we give specific consideration to those aspects of his arguments.

The unconstitutional discrimination exists, says plaintiff, because section 834 requires plaintiff to furnish security for defendants' expenses if the trial court finds that there is no reasonable probability that the corporation will benefit from the derivative action, but does not contain a comparable provision requiring the corporation to post security for plaintiff's expenses if the trial court finds a probability that the corporation will benefit. This is not a denial of equal protection. As was pointed out in *Hogan* v. *Ingold* (1952), *supra,* 38 Cal.2d 802, 812, "If the power of the state over this type of fiduciary litigation is plenary, as the Cohen case states [*Cohen* v. *Beneficial Industrial Loan Corp.* (1949), *supra,* 337 U.S. 541, 551], then surely such litigation is subject to regulation of the type provided by section 834. . . . The stockholder will not incur any liability for costs if he does not essay to bring in equity a suit in the corporation's right. If he does bring such a suit he knows that he [like all others in his class] will be subject to the regulating provisions of the statute."

Although the law does not provide for deposit of security for plaintiff's expenses at the beginning of his action, it

does provide, apart from statute, for charging against the corporation the costs and counsel fees of a plaintiff who has successfully maintained a representative action. (*Fox* v. *Hale & Norcross S.M. Co.* (1895), 108 Cal. 475, 477 [41 P. 328]; *Mason* v. *Drug, Inc.* (1939), 31 Cal.App.2d 697, 702 [88 P.2d 929]; see, also, *Mann* v. *Superior Court* (1942), 53 Cal.App.2d 272, 282 [127 P.2d 970]; 152 A.L.R. 914.) Since counsel fees for maintaining the action in such a situation are measured in a material part by the benefits recovered on behalf of the corporation, and both costs and counsel fees are charged against the corporation and may be made payable out of or a lien against the fund recovered, there is little likelihood that a plaintiff might successfully maintain the action and yet be unable to collect an award for his expenses.

■ Plaintiff argues that section 834 unconstitutionally discriminates against poor stockholders who are unable to furnish the required security. But if plaintiff's argument in this respect were accepted then any statute which required the payment of a fee or the furnishing of security as a prerequisite to the filing of a complaint, the issuance or levying of a writ, the procurement of a record on appeal, etc., would be unconstitutional. Plaintiff relies upon *Morganti* v. *Morganti* (1950), 99 Cal.App.2d 512, 516 [222 P.2d 78] (see, also, *Dribin* v. *Superior Court* (1951), 37 Cal.2d 345, 349-350 [231 P.2d 809, 24 A.L.R.2d 864]), where it was held that the right to divorce an incurably insane spouse could not constitutionally be limited to those who could guarantee that the spouse would be supported for his or her life expectancy. The Morganti case is not controlling or persuasive here; rather, the analogies suggested by defendants (requirement of filing fees, etc.) are pertinent. (See, also, *Escobedo* v. *State of California* (1950), 35 Cal.2d 870, 878 [222 P.2d 1].) More basically, it is also pointed out that the plaintiff here is not seeking to enforce any personal right; rather, he is seeking to have the court accept his nomination of himself to act in a fiduciary capacity in the nature of a guardian ad litem.

■ As held in *Cohen* v. *Beneficial Industrial Loan Corp.* (1949), *supra,* 337 U.S. 541, 549 [69 S.Ct. 1221, 93 L.Ed. 1528], a state may set the terms on which it will permit litigations in its courts, and no type of litigation is more susceptible of regulation than that instituted by a volunteer plaintiff-fiduciary who says that he seeks to enforce derivative

rights for a corporation which refuses to act through its board of directors to the end he demands.

█ Section 834 is unconstitutionally discriminatory in another respect, says plaintiff, because if the individual defendants had been sued by the defendant corporation itself, rather than by plaintiff stockholder in his representative capacity, they would not have been entitled to security. This effect of the statute does not create an unreasonable classification; every stockholder who, like plaintiff, is unable to induce the corporation, through its board of directors, to institute a particular action on its own behalf, and who undertakes as its volunteer representative to sue on the cause asserted by him, may be required to furnish security. The fact that there may be individual defendants who are sued by a corporation on causes deemed proper by it, rather than by a self-nominated stockholder-fiduciary on causes deemed proper by him, and thus cannot have the benefit of security, is not a cause for complaint by this plaintiff.

Plaintiff points out that if he did furnish security and the action were prosecuted to judgment, defendants might ''have recourse to such security in such amount as the court shall determine upon the termination of such action,'' and that under this last quoted portion of section 834 the individual defendants might be allowed to recover attorneys' fees from plaintiff if they ultimately prevailed, whereas plaintiff could not recover such fees from the individual defendants if he prevailed. For reasons and on the authorities already discussed as well as those immediately hereinafter summarized, there is no merit in this contention. In extension of the same point plaintiff objects, further, that if the quoted language is read literally the defendants, both corporate and individual, might be allowed to recover expenses although plaintiff prevailed in the action. The present case has not come to the state where the last-mentioned problems would arise. █ However, in answer to the last argument, it may be suggested that it would appear to be an abuse of discretion for a trial court to make an award of costs or attorneys' fees in favor of a losing defendant and against a representative plaintiff in a situation where the suit materially benefited the corporation.

In support of his above stated contentions, plaintiff relies upon *Builders' Supply Depot* v. *O'Connor* (1907), 150 Cal. 265, 268-269 [88 P. 982, 119 Am.St.Rep. 193, 17 L.R.A.N.S. 909], The statute under consideration there provided for

an award of attorneys' fees only to those who established their claims under the mechanics' lien law and not to those who successfully resisted such claims of lien. This court held, "A statute which gives an attorney's fee to one party in an action and denies it to the other, and allows such fee in one kind of action and not in other kinds of actions where, as in the statute here in question, the distinction is not founded on constitutional or natural differences, is clearly violative of the constitutional provisions above noticed [U.S. Const., Amendment XIV] Cal. Const., art. I, §§ 1, 21, art. IV, § 25]." ■ However, as the Builders' Supply case recognizes and as defendants and amici curiae point out, so long as the basis of the classification is reasonable, the Legislature can provide that in various types of action only a successful plaintiff or appellant can recover attorneys' fees or only a defendant can appeal. (*Missouri, K. & T. R. Co.* v. *Cade* (1914), 233 U.S. 642, 649 [34 S.Ct. 678, 58 L.Ed. 1135] [statute providing that any person may present to his debtor a bona fide claim for services rendered, material furnished, overcharges on or damage to freight, or injury to stock, and that if the debtor does not pay within 30 days such person can sue upon the claim and, if his suit is successful, can recover not only costs but also reasonable attorneys' fees]; *Engebretsen* v. *Gay* (1910), 158 Cal. 30, 32 [109 P. 880, Ann.Cas. 1912A 690, 28 L.R.A.N.S. 1062] [Stats. 1885, p. 147, as amended (Deering's Gen. Laws (1906), Act 3930, § 12), providing that plaintiff can recover attorneys' fees as well as costs in successful action to recover unpaid amount of street assessment]; *Superior Wheeler Cake Corp.* v. *Superior Court* (1928), 203 Cal. 384, 386-387 [264 P. 488] [former Code Civ. Proc., § 927j (Stats. 1921, p. 120), providing that unsuccessful defendant but not unsuccessful plaintiff can appeal from judgment of small claims court; the court emphasizes that it was plaintiff who invoked the quick and inexpensive small claims procedure and that if plaintiff wished a mutual right of appeal he could have invoked the regular jurisdiction of the justice's court]; *Sacramento M. U. Dist.* v. *Pacific Gas & Elec. Co.* (1942), 20 Cal.2d 684, 693-696 [128 P.2d 529] [Code Civ. Proc., § 526b, providing that if an unsuccessful plaintiff in a suit to enjoin the sale of public utility's bonds is interested in a public utility business of the same nature as that for which the bonds are proposed, such plaintiff is liable to the defendant for the costs, damages, and necessary expenses resulting from the suit]; *City of*

*Alturas* v. *Superior Court* (1940), 36 Cal.App.2d 457, 459 [97 P.2d 816] [Code Civ. Proc., § 117j, providing that if a final judgment of the superior court is rendered against a defendant who appeals from a judgment of the small claims court he shall pay plaintiff an attorney's fee].)

The Legislature could determine that normally the officers and employes of corporations do not mismanage the corporation's funds, that usually if third persons deal wrongfully with the corporation the directors cause it to prosecute any proper right of action in its own name, and that it is not unlikely that some stockholders may abuse the remedy of the representative suit and institute such a suit (sometimes called a "strike suit") to gain personal advantage by obtaining a settlement from the corporate defendant rather than to benefit such defendant.[3] The Legislature could further take cognizance of the notorious fact that the bringing of groundless derivative suits by irresponsible persons has in some jurisdictions approached the character of a "racket." (*Cohen* v. *Beneficial Industrial Loan Corp.* (1949), *supra*, 337 U.S. 541, 548-549; *Lapchak* v. *Baker* (1948), 298 N.Y. 89, 94-95 [80 N.E.2d 751].) It has been suggested that the representative suit has not been abused by the bringing of "strike suits" in California as it has in some eastern states. But since there is a reasonable basis for the legislative determination that there is a probability that the remedy may be abused, that determination is binding upon the courts, and to assert that representative suits have not been used in bad faith in this state does not aid the stockholder in his attempt to have the legislation stricken down. (See *Sacramento M. U. Dist.* v. *Pacific Gas & Elec. Co.* (1942), *supra*, 20 Cal.2d 684, 694.) In these circumstances the Legislature, for the protection of third persons who have dealt with the corporation, as well as for the protection of the corporation and its officers and employes, can constitutionally require that the stockholder who would act as in the nature of a guardian ad litem must, as a condition of prosecuting the action on behalf of the corporation, either show a reasonable probability that the suit will be successful or secure

---

[3]As amici curiae point out, the Legislature could also determine that "a plaintiff generally finds it easier to employ an attorney on a wholly contingent basis than does a defendant, thus not assuming any personal liability for fees unless he is successful, whereas a defendant will ordinarily have incurred such a liability regardless of the outcome of the case."

the payment of the defendants' expenses should they prevail. The Legislature, of course, can attribute some weight to the fact that the corporation has not seen fit to institute action on a cause which either belongs to it or to no one.

Plaintiff argues that section 834 violates not only the requirement of equal protection but also the federal and state requirements of due process (U.S. Const., Amend. V; Cal. Const., art. I, § 13). This argument is answered by the consideration that it is only *reasonable* expenses in an amount to be determined by the court on notice and hearing which plaintiff may be required to secure. (See *Cohen* v. *Beneficial Industrial Loan Corp.* (1949), *supra,* 337 U.S. 541, 552.) It is to be noted that the California statute is even less susceptible to the charge that it violates due process than is the New Jersey statute upheld in the Cohen case, for the California statute contains the safeguard, not found in the New Jersey statute, of a preliminary showing by defendants that there is no reasonable probability of benefit to the corporation from prosecution of the action.

Plaintiff claims that defendants have not met their burden of proving that there is no reasonable probability that prosecution of the action will benefit the corporation or its security holders. The evidence on this matter is conflicting.[4]

"It is for the trial court to weigh the evidence and its finding, based upon substantial conflicting evidence, is in this as in every civil case binding upon the appellate

---

[4]There is no written memorandum representing the entire agreement among the parties. The factual dispute is as to whether such agreement (which, so far as it was carried out, required organization of the corporation and issuance of shares to plaintiff and the individual defendants in consideration of plaintiff's transferring certain oil leases to the corporation and the individual defendants' paying certain sums to plaintiff) also required Carpenter and Henderson to acquire and transfer to the corporation the Norris lease, for which they were negotiating. Plaintiff testified that at a meeting of the parties prior to organization Carpenter and Henderson agreed to transfer such lease. Henderson testified that at such a meeting of the parties he said he would not transfer his interest in the Norris lease and Carpenter (since deceased) stated that he wanted more time to think the matter over. Another individual defendant, not a respondent here, testified that at such meeting Henderson said he would not transfer the Norris lease to the company and Carpenter said that he could not act at the time because the lease was ''in litigation.'' Still another individual defendant testified that he did not recall hearing Carpenter say that he would transfer his interest to the company; that he said the lease ''was under litigation . . . and nothing could be done about it.'' Although the testimony as to the dates of the meetings referred to is uncertain, the trier of fact could resolve such testimony favorable to defendants and find that at no time did Henderson and Carpenter agree to transfer the Norris lease to Juno.

court." (*Wood* v. *Gordon* (1952), 112 Cal.App.2d 374, 376 [246 P.2d 84].) In connection with his argument that defendants have not sustained their burden of proof as to lack of reasonable probability of benefit to the corporation or its security holders, plaintiff says further, "Manifestly, this is not such a 'strike suit' as was mentioned by the United States Supreme Court in its decision in the Cohen case. If it is not such a 'strike suit,' then the only possible reason for allowing security and costs for attorneys' fees entirely disappears." But the question before the trial court was not whether this was a "strike suit"; the question for that court was whether, regardless of plaintiff's motive in instituting the action, there was or was not a probability of benefit to the corporate defendant. ▮ "The argument that the statute was intended and should be limited to strike suits is unavailing in view of its language." (*Wood* v. *Gordon* (1952), *supra*, p. 377 of 112 Cal.App.2d.)

Since defendants' motion for security was properly granted on the ground that there was no reasonable probability that the action will benefit the corporation, plaintiff's contention that the individual defendants have not shown that they "did not participate in the transaction complained of" need not be considered.

Plaintiff urges that the trial court abused its discretion by ordering that he furnish an excessive amount of security to Juno, Henderson, and Carpenter. As previously stated, plaintiff was ordered to furnish security of $1,000 for Juno and $5,000 each for Henderson and Carpenter. Even if we assume, as argued by plaintiff, that if the action is to be tried on its merits it is Henderson and Carpenter who will carry the main burden of defending the suit and that the corporation need not actively resist the claims of plaintiff (see *Meyers* v. *Smith* (1933), 190 Minn. 157, 159 [251 N.W. 20]; *Slutzker* v. *Rieber* (1942), 132 N.J.Eq. 412, 413, 415 [28 A.2d 528]; *Chaplin* v. *Selznick* (1945), 186 Misc. 66 [58 N.Y.S.2d 453, 455]), it does not follow that the amount fixed as to any defendant is unreasonable and beyond the range of judicial discretion. Obviously, it is proper for the corporation, if its position is justified at all, to employ counsel, appear in the proceeding by answer or otherwise, and move for the deposit of security for its expenses. It may be that if plaintiff had deposited security and the action had been tried, it might have developed that $1,000 would have ex-

ceeded the amount of Juno's reasonable expenses.     But it does not appear as a matter of law that it was unreasonable to require security of $1,000 at the time the order was made. And the order that $1,000 be deposited as security does not constitute a determination that that will be the amount of Juno's costs and reasonable attorneys' fees; plaintiff is mistaken in his assertion that such order ''was in effect an order fixing a retainer of $1,000.00 for the corporation''; under section 834 the amount of costs and attorneys' fees cannot be determined until the completion of the suit.

The requirement of security of $5,000 each as to Henderson and Carpenter does not appear so excessive (if excessive at all) as to constitute an abuse of discretion as a matter of law. At the time the order was made it had to be contemplated that the attorneys for those individual defendants would have to defend against the representative suit on the merits at a possibly extended trial if plaintiff saw fit to furnish the security and continue such suit; the complaint seeks not only to compel assignment of a described oil lease but also an accounting and the recovery of more than $75,000 alleged to have been wrongfully collected and withheld by the individual defendants; and the possibility of services and costs on appeal was to be considered. Pertinent to this subject—and tending also to derogate plaintiff's more basic arguments against the type of legislation here involved—is the fact that although no security has been furnished, defendants' attorneys have already rendered substantial services in the superior court on the primary and counter motions and on this appeal in defense of the attack made by plaintiff on the constitutionality of section 834 and the propriety of its application here.

Plaintiff's objection to the order requiring deposit of security extends not only to the amount but also to the form of security. The superior court ordered ''that said security shall be deposited in the form of cash or a bond or bonds issued by a security company authorized to issue such bonds.'' As already mentioned, after the making of this order plaintiff moved for an order changing the amount and form of security. In support of this motion he filed an affidavit which avers that although he has assets the fair market value of which exceeds the amount of security required, he would sustain financial loss by converting those assets into cash, and that the surety companies which execute the bonds which the court order permits him to furnish demand cash collateral in the

total amount of such bonds. It appears that before the trial court plaintiff emphasized the hardship to himself resulting from the requirement of cash, rather than the sufficiency or reasonableness of the form of security as a protection to the defendants.

On appeal plaintiff argues that the Code of Civil Procedure (§§ 1041, 1057)[5] provides that wherever a bond is required by any law of this state it may be an undertaking executed by two residents and householders, or freeholders, within the state. There is no such requirement of the acceptance of an undertaking executed by personal sureties in every case where security is necessary; the Code of Civil Procedure simply prescribes what the sureties must undertake and what the officer taking the bond must require in the event a freeholders' bond can be and is furnished. Section 834 of the Corporations Code, which relates specifically to and controls the present proceeding, does not prescribe the type of security which can be required; its provision that "the court shall fix the nature and amount of security" leaves the matter to the sound discretion of the trial court. Where the trial court determines upon sufficient evidence that there is slight probability that plaintiff's representative suit has merit and where from the nature and multiplicity of issues involved it appears that the trial might be an extended one, and that counsel might have to prosecute or defend appeals, we cannot hold that the court, as a matter of law, abused its discretion in fixing either the amounts or character of security here prescribed.

It is furthermore to be observed that, regardless of the propriety of the order requiring deposit of security for the individual defendants, the judgment of dismissal is, for another and independent reason, the only proper judgment here. Plaintiff failed and refused to furnish the security for the corporation as ordered. The corporation is an in-

---

[5]Those sections provide in material part as follows:

Section 1041: "Whenever a party to an action or proceeding desires to give an undertaking provided to be given by any statute of this State, it shall be sufficient if the sureties sign an undertaking indicating that they are bound to the obligations of the statute requiring the undertaking to be given. Such undertaking may be in form as follows:..."

Section 1057: "In any case where an undertaking or bond is authorized or required by any law of this State, the officer taking the same must . . . require the sureties to accompany it with an affidavit that they are each residents and householders, or freeholders, within the State, and are each worth the sum specified in the undertaking . . ."

dispensable party to a representative action brought on its behalf; its rights, not those of the nominal plaintiff, are to be litigated, and the court has no jurisdiction to adjudicate its rights in its absence as a party. ▓ Dismissal of the corporation at any stage in a representative action must result in a discontinuance of the action, not for a mere defect in parties, but for lack of jurisdiction to proceed. (*Beach* v. *Cooper* (1887), 72 Cal. 99, 103 [13 P. 161]; *Wickersham* v. *Crittenden* (1892), 93 Cal. 17, 33 [28 P. 788]; *Turner* v. *United Mineral Lands Corp.* (1941), 308 Mass. 531 [33 N.E.2d 282, 286].) ▓ Therefore, when plaintiff refused to deposit the security required for the corporation, the action could not continue against that indispensable party, or in its absence against any other party, and the trial court had no alternative but to dismiss as to all defendants.

Plaintiff contends, finally, that the court below erroneously dismissed the action at a time when his motion to change the amount and form of security was pending. As previously stated, the order of August 27, 1951, required that plaintiff deposit security within 30 days and that if he did not do so the action, upon proper showing, should be dismissed. Twice on ex parte application of plaintiff a judge signed an order purporting in effect to modify the original order (which had been regularly entered after hearing on notice) by extending the time for deposit of the security. ▓ Although defendants have, for the purpose of argument, assumed that the ex parte orders might be effective, at least in part, this assumption is contrary to the established rule that "the trial court is without power to set aside an order involving judicial action and regularly made, and enter another and different order *without notice* to the adverse party." (*Harth* v. *Ten Eyck* (1941), 16 Cal.2d 829, 834 [108 P.2d 675]; *Bond* v. *Farmers & Merchants Nat. Bank* (1944), 64 Cal.App.2d 842, 848 [149 P.2d 722].) ▓ In this case the determination, and the fixing by the order, of the period which under all the circumstances shown would constitute a reasonable time for the furnishing of the security was just as much a part of the "judicial action" as was the determination and fixing of the amount and character of the security to be required. A motion seeking to amend that order in any particular which had been fixed as a part of judicial action could be entertained only upon notice to the adverse parties. It follows that the purported orders postponing the time for deposit of the security, having been made ex parte, were ineffective.

██ Plaintiff's subsequent motion to change the form and amount of security and the date for furnishing the same, however, was properly before the court for disposition, upon notice and after argument. Section 834 of the Corporations Code provides, ''The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court upon showing that the security provided has or may become inadequate or is excessive.'' The trial court had power to reconsider the questions of the appropriate amount and form of security (see *Harth* v. *Ten Eyck* (1941), *supra,* pp. 833-834 of 16 Cal.2d) and it did reconsider those questions. But whether it should grant or deny plaintiff's motion was a matter addressed to its sound discretion. And it was only after it had determined, in the exercise of that discretion, that the motion should be denied that, on December 19, 1951, it entered the judgment of dismissal. The fact that the minute order for dismissal was entered on December 14 is immaterial.

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

EDMONDS, J.—I concur in the judgment upon the ground that the plaintiff failed to provide security for the corporation as ordered by the court.

CARTER, J.—I dissent.

It is my considered opinion that certain portions of section 834 of the Corporations Code, as applied here, are unconstitutional, particularly the requirement that plaintiff shareholder in a derivative suit furnish security for the expenses of individual defendants who are sued, not as officers or employees of defendant corporation, but as third persons who dealt with the corporation. Such a provision is violative of the equal protection clause of the federal Constitution (U. S. Const., Amendment XIV, § 1) and the provisions of the California Constitution against special laws (Cal. Const., art. IV, 25).

Section 834 provides that within 30 days after service of summons in a shareholder's action the corporation *or other defendant* may move the court for an order requiring plaintiff shareholder to furnish security for the reasonable expenses, including attorney's fees of the corporation and the

moving party which will be incurred in the defense of the action. This means that as a condition precedent to the maintenance of the action a stockholder plaintiff can be required to post security not only for the corporation's expenses but also for the expenses, including attorney's fees, *of third party defendants who are neither officers, directors, nor employees of the corporation.* It is in this respect that I would hold the statute unconstitutional as a denial of equal protection.

The majority recognizes the fact that this precise question has never yet been decided, as it states: ''However, inasmuch as some of the particular aspects of plaintiff's arguments as to the constitutionality of a provision for security for and possible indemnification of an individual defendant who is not sued as an officer or employe of a corporation appear to be advanced in this case for the first time we give specific consideration to those aspects of his arguments.'' In spite of this, the majority opinion proceeds to merely gloss over the issue by inadequately discussing the principal constitutional objection and then saying: ''Fundamentally, plaintiff's arguments as to constitutionality are answered, either directly or by necessary implication, by *Cohen* v. *Beneficial Industrial Loan Corp.* . . .'' Following this statement it admits that the New Jersey statute, involved in the Cohen case, ''(. . . so far as appears, . . . contained no provision as to, and the opinion does not discuss, individual defendants who were officers or employes). . . .''

In the case of *Cohen* v. *Beneficial Industrial Loan Corp., supra,* 337 U.S. 541, the United States Supreme Court upheld a statute requiring security to be posted *for the corporation* when a shareholder brings a representative suit. The court there held that such a classification was a proper one since the shareholder can be required by state legislation *to protect the corporation he seeks to represent.* It said: ''And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will *protect the interests he elects himself to represent.* (Emphasis added.) Thus it would appear that it may be proper for a state to require a stockholder plaintiff to protect the *interests he is representing*

by posting security, but this cannot be construed to mean that he is to protect all interests including the third party defendants against whom he proceeds. The majority also cites *Hogan* v. *Ingold*, 38 Cal.2d 802 [243 P.2d 1], as answering "either directly or by necessary implication" plaintiff's arguments as to the constitutionality of section 834 but it follows this by saying: "(in which the problem as to such individual defendants did not arise). . . ."

The majority seems to feel that it is not essential to make a complete study of this constitutional question as is illustrated by the following statement: ". . . regardless of the propriety of the order requiring deposit of security for the individual defendants, the judgment of dismissal is, for another and independent reason, the only proper judgment here. Plaintiff failed and refused to furnish the security for the corporation as ordered. . . . Therefore, when plaintiff refused to deposit the security required for the corporation, the action could not continue against that indispensable party, or in its absence against any other party, and the trial court had no alternative but to dismiss as to all defendants." This argument is misleading as it overlooks the fact that even if plaintiff had posted security for the corporation he still would not have been able to proceed against the other defendants without first furnishing the security prescribed as to them. In view of this and the fact that grave questions of constitutionality were involved, plaintiff appears to have followed a proper course of action by appealing from the order of dismissal.

It is well recognized that the equal protection clause prohibits discriminating and partial legislation in favor of particular persons as against others in like condition. The United States Supreme Court has said that: ". . . equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; *that they should have like access to the courts of the country* for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition. . . ." (Emphasis

added; *Barbier* v. *Connolly*, 113 U.S. 27, 31 [5 S.Ct. 357, 28 L.Ed. 923].)

The equal protection clause does not prevent the Legislature from setting up different requirements for different types and classes of litigants; however, a state legislature may not arbitrarily select certain individuals for the operation of its statutes since such selection is obnoxious to the equal protection clause. Legislation which is directed toward certain limited individuals and not against others can only be sustained if the classification is a reasonable one based on adequate grounds.

Under the provisions of section 834, a situation is presented where the plaintiff in a shareholder's derivative suit may be required to pay the defendant's attorney's fees if he is unsuccessful, but the defendant is not required to pay plaintiff's counsel fees if the latter wins. Such a statute gives one party greater rights and advantages than the other and is invalid unless there is some adequate reason why third party defendants should receive different treatment than the plaintiff shareholder. No such adequate reason has been advanced by the majority and I am convinced the legislation is arbitrary and a denial of the equal protection of the law in that the classification is an unreasonable one.

Discriminatory legislation of this type was held unconstitutional in *Builders' Supply Depot* v. *O'Connor*, 150 Cal. 265 [88 P. 982, 119 Am.St.Rep. 193, 17 L.R.A.N.S. 909]. In that case the mechanic's lien law provided for attorney's fees only to those who established their claim under said law and not to those who successfully resisted such claim of lien. In holding such a law unconstitutional this court (p. 268) said: "This provision is in our opinion violative both of the federal and the state constitution—of the fourteenth amendment of the former, which guarantees to every person 'the equal protection of the law,' and of the provisions of the state constitution which provide that general laws shall be uniform, prohibit special laws, and declare the inalienable rights of all men of acquiring, possessing, and protecting property. A statute which gives an attorney's fee to one party in an action and denies it to the other, and allows such fee in one kind of action and not in other kinds of actions where, as in the statute here in question, the distinction is not founded on constitutional or natural differences, is clearly violative of the constitutional provisions above noticed."

If plaintiff did furnish security and the action were prosecuted to judgment the individual defendant, under section 834, could recover attorney's fees from plaintiff if they prevailed but plaintiff could not recover such fees from the individual defendants if he prevailed. What sound basis can there be for the provision in section 834 which gives a third party defendant, who is not an officer or employee of the defendant corporation, this preferential treatment? Merely because an individual defendant is sued in a derivative suit does not put him in any substantially different position than, if he had been sued directly by either the corporation or by plaintiff and for this reason he should not be entitled to any special consideration. It is true that the corporation shall be responsible for the costs and counsel fees of a plaintiff who has successfully maintained a shareholder's derivative suit but this does not remedy the situation since the plaintiff is still put to the disadvantage and expense of posting security for a defendant who is under no corresponding disadvantage.

Even if the shareholder could ultimately prevail, this requirement of an advance security for each individual defendant might impose such a severe financial strain upon the shareholder that he would be unable to raise the money and consequently be unable to continue with the derivative suit. In the instant case the trial court required a bond of $5,000 for each individual defendant. What if there had been 20 or more such defendants? How many small shareholders are in a position to post security bonds of $100,000 or more? As a practical matter a requirement of this type would keep most small shareholders from bringing derivative suits and is therefore highly discriminatory.

It has been said that the purpose of statutes of this type is to protect corporations, their directors, officers and employees against so-called "strike suits" and the litigation expenses which may be unjustifiably foisted upon them; however the California legislation goes beyond this in that it imposes liability on the plaintiff for the expenses of successful stranger defendants under certain conditions.

It is frequently argued that the posting of such security in favor of the corporate defendant is justifiable since where the shareholder elects himself as the champion of the corporation's cause of action he should be liable for any expenses which he brings about should he be unsuccessful. (See *Cohen* v. *Beneficial Industrial Loan Corp., supra,* 337 U.S.

541.) Such an argument is not applicable where such special protection is given to a third party defendant who would be entitled to no special consideration if he had been sued directly by the corporation or by an individual plaintiff. The mere fact that the individual defendant is sued in a derivative suit does not put him at any greater disadvantage than if he were sued directly, and for this reason, he should not be entitled to special protection at the expense of the plaintiff shareholder.

Even prior to 1949 the California courts recognized that a plaintiff must meet certain requirements in order to maintain a shareholder's derivative suit. Such requirements were found necessary to protect corporations from the so-called "strike suit" or "shakedown suit" wherein a plaintiff sued primarily to harass the corporation into a pecuniary settlement. The early case of *Whitten* v. *Dabney,* 171 Cal. 621 [154 P. 312], helped to remove a primary cause of the strike suit by holding that once commenced a stockholder plaintiff could compromise his suit only under the strict surveillance of the court. However, in 1949 with the passage of section 834, the California Legislature went even further in the curtailment of stockholder's derivative suits. The California legislation was in part patterned after the New York Act (N.Y. Gen. Corp. Laws, § 61-b) but it went far beyond its predecessor in the requirement that plaintiff can now be held liable for the expenses of successful stranger defendants under certain conditions.

The primary purpose of legislation of this type has been said to be "to protect corporations, their directors, officers, and employees against so-called 'strike suits' and the litigation expenses which may be unjustifiably foisted upon them." (Ballantine, *Abuses of Shareholders Derivative Suits: How Far is California's New "Security for Expenses" Act Sound Regulation?* 37 Cal.L.Rev. 399.) In order to carry out this purpose the New York Law (N.Y. Gen. Corp. Laws, *supra,* § 61-b), the New Jersey Law (N.J. Stat. Ann., tit. 14, §§ 3-14) and the Pennsylvania Law (Pa. Stat. Ann., tit. 12, §§ 1321 and 1323) each provides that the shareholder plaintiff post security for the expenses of the corporation and the other defendants for whose costs the corporation may be liable (i.e., directors, officers and employees). However, they do not require that he post security for the expenses of third person defendants who are neither directors, officers nor employees of the corporation since the corporation which plaintiff elects

to represent would not be liable for such expenses. In California section 834 purports to go considerably further than the laws of its sister states in requiring the plaintiff shareholder to be liable for the attorney's fees of third party defendants even though the corporation itself could not be held liable for such expenses. Such a provision is not only unwarranted but it is a denial of the equal protection of the laws since it requires the plaintiff shareholder to post security for the third party defendant's attorney's fees without imposing a corresponding liability on the third party defendant.

Some authorities hold that it is a prudent precaution to attempt some reasonable regulation of derivative actions to prevent strike suits, but I feel that the rule of *Whitten* v. *Dabney, supra,* 171 Cal. 621, (limiting the shareholder's right to settle derivative suits once commenced) and the provisions of section 834 requiring security for the corporation's expenses are sufficient. I see no sound reason why the plaintiff shareholder should be further. limited by having to post security for the expenses of third party defendants.

Granting that some restrictions are necessary it should be remembered that "Great evil, however, will result if undue obstacles are placed in the path of a shareholder who has legitimate grounds for suing. The derivative action is practically the only remedy for calling the management to account for its wrongs against the corporation and to obtain restitution." (Ballentine, *Abuses of Shareholders Derivative Suits, supra,* 37 Cal.L.Rev. 399, 416.)

For these reasons I feel there is no adequate basis for the discriminatory provisions of section 834; that they violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and constitute an undue impediment to the very necessary stockholder's derivative suit. It must be remembered that the reported decisions of this court show many instances in which stockholders of corporations have been defrauded and that many derivative suits have been meritorious.

I would therefore reverse the judgment of dismissal.